# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JASON MCLEAN and
BRIAN COLEMAN,

       Plaintiffs,

    v.

COMMUNICATIONS CONSTRUCTION
GROUP, LLC, BRAD DODSON,
JONATHAN GATES AND MIKE
FENDER,

       Defendants.

CIVIL ACTION NO.  06-617 (JJF)


**JURY TRIAL OF TWELVE
DEMANDED**

---

## DEFENDANT COMMUNICATIONS CONSTRUCTION GROUP, LLC'S
## MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
## PARTIAL DISMISSAL OF THE COMPLAINT

Michael P. Kelly (DE Bar ID #2295)
Andrew S. Dupre (DE Bar ID #4621)
McCarter & English LLP
Citizens Bank Building
919 N. Market Street, 18th Floor
Wilmington, DE 19801
302.984.6301
302.984.2493 (fax)
mkelly@mccarter.com

Thomas Benjamin Huggett
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
215.963.5191
215.963.5001 (fax)
tbhuggett@morganlewis.com

Dated: October 24, 2006

Attorneys for Defendant
Communications Construction Group, LLC

# TABLE OF CONTENTS

Page

I.      INTRODUCTION AND BACKGROUND ................................................................. 1

II.     STANDARD ........................................................................................................... 2

III.    ARGUMENT ......................................................................................................... 3

      A.    This Court Should Dismiss Plaintiffs' Title VII Claims Against the
           Individual Defendants Because There Is No Individual Liability
           Under Title VII ............................................................................................. 3

      B.    This Court Should Dismiss Plaintiffs' Equal Protection Clause Claim
           as to All Defendants Because Plaintiffs Have Failed to Allege In Their
           Complaint That Defendants Were State Actors ........................................... 3

      C.    This Court Should Dismiss Plaintiffs' Breach of Contract Claim as to ................. 4
           CCG Because it is Preempted by the Exclusivity Provision of
           Delaware's Employment Discrimination Statute ....................................... 4

      D.    This Court Should Dismiss Plaintiffs' Breach of Contract Claim as to
           The Individual Defendants Because They Were Not a Party to Plaintiffs'
           Employment Contract ................................................................................... 4

      E.    This Court Should Dismiss Plaintiffs' Assault and Battery Claim Because
           It is Preempted by the Exclusivity Provision of Delaware's Workers'
           Compensation Act ....................................................................................... 5

CONCLUSION .................................................................................................................. 7

ME1\5921688.1

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984)..................................................................................................2

*Konstantopoulos v. Westvaco Corp.,*
    112 F.3d 710 (3d Cir. 1997) .................................................................................5

*Magill v. Avonworth Baseball Conference,*
    516 F.2d 1328 (3d Cir. 1975) ...............................................................................3

*Neitzke v. Williams,*
    490 U.S. 319 (1989)..............................................................................................2

*Nelson v. Fleet National Bank,*
    949 F. Supp. 254 (D. Del. 1996).......................................................................4, 6

*Schrob v. Catterson,*
    948 F.2d 1402 (3d Cir. 1991) ...............................................................................2

*Shelley v. Kraemer,*
    334 U.S. 1 (1948)..................................................................................................3

*Sheridan v. E.I. du Pont de Nemours & Co.,*
    100 F.3d 1061 (3d Cir. 1996) ...............................................................................3

### STATE CASES

*Chavis v. Wendover Inc.,*
    2003 WL 1918287 (D. Del.)...................................................................................5

*Murdoch v. Camp Arrowhead Church Camp,*
    2003 WL 21526993 (Del. Super.)..........................................................................6

*Rose v. Cadillac Fairview Shopping Ctr.,*
    668 A.2d 782 (Del. Super. Ct. 1995), *aff'd sub nom*...............................................5

*Rose v. Sears, Roebuck & Co.,* 676 A.2d 782 (Del. 1996) .............................................5

*Ward v. General Motors Corp.,* 431 A.2d 1277 (Del. Super. Ct. 1981).........................6

*Wilcoxon v. Red Clay Consolidated Sch. District Board of Education,*
    437 F. Supp. 235 (D. Del. 2006)...........................................................................4

ME1\5921688.1

## FEDERAL STATUTES

Page

42 U.S.C. §2000e-3 ................................................................................................................... 1

## RULES AND STATUTES

19 Del. C. § 712(b) (2005) ......................................................................................................... 4

19 Del. C. § 2304 (1996) ............................................................................................................ 5

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 2

ME1\5921688.1

## I.    INTRODUCTION AND BACKGROUND

Defendant Communications Construction Group, LLC (hereinafter "CCG")

provides construction services for the cable television and telephone industries.  The alleged

events giving rise to Plaintiffs' Complaint include an incident that occurred while Plaintiff Jason

McLean ("McLean") and Plaintiff Brian Coleman ("Coleman") were employees of CCG

engaged in the installation of underground conduit for Verizon in Newark, Delaware, their

subsequent transfer to Philadelphia, Pennsylvania, and finally their layoff for lack of work.

On October 2, 2006 McLean and Coleman filed a Complaint against Defendants

Communications Construction Group, LLC[1], as well as Brad Dodson, Jonathan Gates and Mike

Fender ("Individual Defendants") (collectively "All Defendants") alleging claims of racial

harassment and discrimination in violation of Federal and State law (Count I), retaliation in

violation of Title VII of the Civil Rights Act of 1954, as amended, 42 U.S.C. §2000e-3 (Count

II), and discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment

(Count III), as well as Delaware state law claims alleging breach of the implied covenant of good

faith and fair dealing  (Count IV) and assault and battery (Count V).

Defendant CCG files this Motion for Partial Dismissal to clarify that only two

counts against it – Count I for alleged racial discrimination and Count II for alleged retaliation –

are properly before this court.  All remaining counts impermissibly attempt to make witnesses

into individual Defendants and to assert legally untenable claims.  Specifically, Plaintiffs' Title

VII claims should be dismissed as to the Individual Defendants because there is no individual

liability under Title VII.  Plaintiffs' claim of discrimination in violation of the Equal Protection

Clause should be dismissed as to All Defendants because Plaintiffs have failed to allege in their

---

[1]      Plaintiffs mistakenly named Communications Construction Inc. as a defendant in the caption.  The correct
name of this entity is Communications Construction Group, LLC.

1

Complaint any state action on the part of Defendants. Additionally, Plaintiffs' breach of implied covenant of good faith and fair dealing claim should be dismissed as to All Defendants because that claim is preempted by the exclusivity provisions of Delaware's employment discrimination statute and because the Individual Defendants were not a party to Plaintiffs employment contract. Finally, Plaintiffs assault and battery claim should also be dismissed as to All Defendants because it is barred by Delaware's Workers' Compensation statute.

## II.    STANDARD

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept the allegations set forth in a complaint as true and view them in the light most favorable to a plaintiff. Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). If, however, it appears from the face of the complaint that a plaintiff can prove no set of facts that would entitle him to relief, the court should dismiss his claims. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Indeed, the purpose of Rule 12(b)(6) is to "streamline[ ] litigation by dispensing with needless discovery and fact finding." Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). CCG requests only that this Court dispose of those claims improperly asserted and recognizes that it will continue to be a party to this action as to Counts I and II.

2

III.    **ARGUMENT**

A.    **This Court Should Dismiss Plaintiffs' Title VII Claims Against the Individual Defendants Because There is No Individual Liability Under Title VII.**

Individuals can not be held liable under Title VII. Sheridan v. E.I. du Pont de Nemours & Co., 100 F.3d 1061, 1077-78 (3d Cir. 1996). In Sheridan, the Third Circuit held that, "Congress did not intend to hold individual employees liable under Title VII." Id. at 1078. Thus Plaintiffs Title VII claim against the Individual Defendants should be dismissed.

B.    **This Court Should Dismiss Plaintiffs' Equal Protection Clause Claim as to All Defendants Because Plaintiffs Have Failed to Allege in Their Complaint That Defendants Were State Actors.**

The Equal Protection Clause of the Fourteenth Amendment protects citizens from discrimination only when the discriminatory conduct is committed by state actors. Shelley v. Kraemer, 334 U.S. 1, 13 (1948). The courts have expanded the state action doctrine to apply to private, individual conduct in three categories of cases: (1) where a state court is required to enforce a discriminatory contract between private parties; (2) where the state is significantly involved with a private party; or (3) where a private party is performing a government function. Magill v. Avonworth Baseball Conference, 516 F.2d 1328, 1331 (3d Cir. 1975).

Defendant CCG is a private corporation which provides construction services for private cable television and telephone companies. Neither CCG nor the Individual Defendants, Brad Dodson, Jonathan Gates, and Mike Fender, who were all CCG employees during the events giving rise to Plaintiffs' Complaint, are in any way involved with the state or performing state functions. Furthermore, Plaintiffs have failed to allege anywhere in their Complaint that the Defendants are state actors. Therefore, Plaintiffs Equal Protection Clause should be dismissed as to All Defendants.

3

**C.**    **This Court Should Dismiss Plaintiffs' Breach of Contract Claim as to CCG Because it is Preempted by the Exclusivity Provision of Delaware's Employment Discrimination Statute.**

Plaintiffs have incorrectly stated the law by alleging that Delaware recognizes a common law cause of action for breach of the implied covenant of good faith and fair dealing in at-will employment contracts when an employee is subject to workplace discrimination. (See Pls.' Compl. ¶ 50.) While Delaware had previously recognized such a breach of contract action, the Delaware legislature amended the state's employment discrimination statute in 2004 providing that the statute was to be the "sole remedy for claims alleging a violation of this subchapter to the exclusion of all other remedies." 19 Del. C. § 712(b) (2005). This Court has recognized this interpretation of the statute. See, e.g., Wilcoxon v. Red Clay Consol. Sch. Dist. Bd. of Educ., 437 F. Supp. 235, 246-47 (D. Del. 2006). Since Plaintiffs' Complaint alleges employment discrimination in violation of Delaware law, Plaintiffs' breach of contract claim is barred and should be dismissed as to CCG. (See Pls.' Comp. ¶ 37.)

**D.**    **This Court Should Dismiss Plaintiffs' Breach of Contract Claim as to the Individual Defendants Because They Were Not a Party to Plaintiffs' Employment Contract.**

Employment contracts, whether express or at-will, are entered into between an employer and an employee. Therefore, an employee cannot sue his co-employees for breach of the implied covenant of good faith and fair dealing arising out of his employment contract with his employer because the co-employees cannot breach a contract that they were not a party to. Nelson v. Fleet Nat'l Bank, 949 F. Supp. 254, 259 (D. Del. 1996). Accordingly, Plaintiffs may not sue the Individual Defendants for breach of their employment contract with CCG and thus Plaintiffs' claim as to the Individual Defendants should be dismissed.

4

**E.    This Court Should Dismiss Plaintiffs' Assault and Battery Claim Because it is Preempted by the Exclusivity Provision of Delaware's Workers' Compensation Act.**

Delaware's Workers' Compensation Act provides the exclusive remedy for tort claims brought by employees "arising out of and in the course of employment." 19 Del. C. § 2304 (1996). To prevail on the exclusivity defense, a defendant must prove: (1) plaintiff was an employee; (2) plaintiff suffered a personal injury; and (3) the injury arose out of and in the course of employment. See Rose v. Cadillac Fairview Shopping Ctr., 668 A.2d 782, 786 (Del. Super. Ct. 1995), aff'd sub nom. Rose v. Sears, Roebuck & Co., 676 A.2d 782 (Del. 1996). Here, Plaintiffs claim should be dismissed because Plaintiffs were employees of CCG (See Pls.' Compl. ¶ 1) and claim they suffered injury (See Pls.' Compl. ¶ 55) which arose out of and in the course of their employment with CCG.

Furthermore, when an employee is injured by a co-employee and the conduct giving rise to the injury occurs during employment and is not based on events occurring outside the workplace, such a claim arises out of and in the course of employment. Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 722-23 (3d Cir. 1997). In Konstantopoulos, the Delaware Supreme Court responded to a certified question posed by the Third Circuit by explaining that because an employee's sexual assault and battery claim was based on actions that occurred at work and was not based on events occurring outside of work, the claim did not fall within the "personal dispute exception" to the Workers' Compensation Act and was thus precluded. Id. See also Chavis v. Wendover Inc., No. 02-334 GMS, 2003 WL 1918287 at *4-5 (D. Del. April 21, 2003) (finding employee's assault and battery claim arising from workplace incident with co-employee preempted by workers' compensation) (Exhibit A hereto).

Additionally, the exclusivity provision bars not only tort actions against employers, but also suits by one employee against a co-employee when the injury giving rise to

ME1\5921688.1

the claim is covered by the Workers' Compensation Act. <u>Ward v. Gen. Motors Corp.</u>, 431 A.2d

1277, 1278-79 (Del. Super. Ct. 1981).  This rule has been applied to dismiss common law tort

claims by employees brought against their co-employees for actions arising out of and in the

course of employment. <u>See, e.g.</u>, <u>Nelson</u>, 949 F. Supp. at 259; <u>Murdoch v. Camp Arrowhead

Church Camp</u>, No. Civ. A. 02C-06-018, 2003 WL 21526993, at *3-4 (Del. June 11, 2003)

(Exhibit B hereto).

       Here, the physical conduct giving rise to Plaintiffs' assault and battery claim arose

out of the work relationship between Plaintiffs and their co-employee Brad Dodson at a CCG job

site during working hours and was not based on events occurring outside of work.  Therefore,

Plaintiffs' assault and battery claim is preempted by the exclusivity provision of Delaware's

Workers' Compensation Act and should be dismissed as to All Defendants.

6

**WHEREFORE**, for the above stated reasons, Defendant CCG respectfully requests that this Court dismiss Counts III, IV, and V against it. Further, Defendant CCG respectfully requests that this Court dismiss all counts as to the Individual Defendants.

Respectfully submitted,

/s/ Michael P. Kelly

Michael P. Kelly
(DE Bar ID #2295)
McCarter & English LLP
Citizens Bank Building
919 N. Market Street, 18th Floor
Wilmington, DE 19801
302.984.6301
302.984.2493 (fax)
mkelly@mccarter.com

Thomas Benjamin Huggett
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
215.963.5191
215.963.5001 (fax)
tbhuggett@morganlewis.com

Dated: October 24, 2006

Attorneys for Defendant
Communications Construction Group, LLC

7

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 1918287 (D.Del.), 91 Fair Empl.Prac.Cas. (BNA) 1296
**(Cite as: 2003 WL 1918287 (D.Del.))**

C

**Motions, Pleadings and Filings**

United States District Court,
D. Delaware.
Tammy CHAVIS, as next friend and parent of the
minor child, Bryan R. Stewart,
Plaintiff,
v.
WENDOVER INC., a Delaware corporation, et al.,
Defendants.
**No. 02-334 GMS.**

April 21, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

  **\*1** On May 2, 2002, the plaintiff, Tammy Chavis, as
next friend and parent of minor child Bryan R.
Stewart ("Stewart"), filed the above-captioned action
alleging race discrimination and constructive
discharge in violation of 42 U.S.C. § 1981. The
complaint also alleges a state law claim for assault
and battery.

  Presently before the court is the defendants' motion
for summary judgment. For the following reasons, the
court will grant this motion in part and deny it in
part.

II. STANDARD OF REVIEW

  The court may grant summary judgment "if the
pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(c);
*see also Boyle v. County of Allegheny Pa.,* 139 F.3d
386, 392 (3d Cir.1998). Thus, summary judgment is
appropriate only if the moving party shows there are
no genuine issues of material fact that would permit a
reasonable jury to find for the non-moving party.
*Boyle,* 139 F.3d at 392. A fact is material if it might
affect the outcome of the suit. *Id.* (citing *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)).
An issue is genuine if a reasonable jury could
possibly find in favor of the non-moving party with
regard to that issue. *Id.* In deciding the motion, the
court must construe all facts and inferences in the
light most favorable to the non-moving party. *Id.;
see also Assaf v. Fields,* 178 F.3d 170, 173-74 (3d
Cir.1999).

III. DISCUSSION

  Stewart is an African-American teenager who was
employed by WenDover, Inc. ("WenDover") at its
Eden Square restaurant from June 2000 until August
4, 2000. On August 4, 2000, Stewart was assigned to
work from 10:30 a.m. until 4:30 p.m. On that day,
one of his managers, Robert Sheats, told him to
empty a trash can in the restaurant. As he was
returning from emptying trash, Stewart alleges that
Vice President of Operations Mark Liebel ("Liebel")
made a series of comments to him and then pushed
his head into a trash can or trash receptacle.
Specifically, Stewart alleges that he emptied the trash
can, took the trash outside to the dumpster, returned
to the store, and was in the process of putting a clean
bag into the trash can. At that point, he claims that he
was approached by Liebel.

  Stewart has testified regarding the substance of his
allegations concerning Liebel's comments several
times. He first testified about the incident during a
hearing before a Commissioner in the Family Court
of the State of Delaware in the matter of *State of
Delaware v. Mark Liebel.* [FN1] At that hearing, he
stated that Liebel's alleged comments were as
follows:

> FN1. Stewart filed a complaint with the
> Delaware State Police that resulted in a
> Family Court action against Liebel for
> offensive touching.

  He had--he said, Did you hear me, right here, I
  said, and he stuck my head in the trash can and
  said, Are you stupid or something? Are you
  retarded? Do you smell it? Do you see the trash?
  **\*2** Tr. of Family Court Hearing at 23.

  At his deposition in the present action, Stewart
testified that Liebel said, "[a]re you retarded, are you
stupid, you people don't know how to clean. Are all

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                           Page 2
Not Reported in F.Supp.2d, 2003 WL 1918287 (D.Del.), 91 Fair Empl.Prac.Cas. (BNA) 1296
**(Cite as: 2003 WL 1918287 (D.Del.))**

ya'll that dumb. Do you see the trash, do you smell it." Tr. of Stewart Dep. at 92. Later in the deposition he testified that Liebel said, "are you dumb, are you retarded, are you stupid. Ya'll people don't know how to clean. Ya'll people are retarded." Tr. of Stewart Dep. at 203.

Stewart does not contend that Liebel referred to him as an "African American" or any synonym therefor. Rather, he maintains that it was his assumption that the phrase "y'all people" referred to African Americans. Specifically, at his deposition, Stewart testified as follows:

Q. And what about what Mark Liebel had allegedly done, what about that was discriminatory?
A. He put his hands on me and he said, ya'll people. He referred to, like African Americans.
Q. Did he ever, Mr. Liebel, did Mr. Liebel ever use the term African Americans?
A. No, he didn't.
Q. Why do you say that he said African Americans?
A. Ya'll people and African Americans?
Q. Why do you think that?
A. Because you people are discussing who I am, and I'm African American.
Q. So when you say that Mr. Liebel said something about African Americans, that's your assumption, right?
A. Yes.
Tr. of Stewart Dep. at 205-206.

When later asked to clarify the allegation in Paragraph 10 of the Complaint that "Liebel yelled racial epithets at plaintiff," Stewart testified as follows:

Q. What's meant by racial epithets here?
A. Racial slang words.
Q. And what were those slang words?
A. You people, you all.
Q. Was there anything else that's meant by racial epithets here?
A. Retarded can be.
Q. Did Mr. Liebel actually say anything that used the word, African American, or some other term that actually refers to African American?
A. A lot of words can refer to African Americans.
Q. Okay. But did he ever use the word African American?
A. No, he didn't.
Q. Did he ever use the word, black?
A. No, he didn't.
Q. Is there anything else that Mr. Liebel said that you take as racial epithets?
A. At this present moment, that's all I can say.

*Id.* at 275-276.

Following the incident in question, Stewart worked the remainder of the day, and left the restaurant at 4:30 p.m., as scheduled. At that time, he informed his mother of what had happened, and she told him he "couldn't go back." He thus resigned his employment with WenDover.

## IV. DISCUSSION

### A. 42 U.S.C. § 1981

In Count I of the complaint, Stewart alleges that, due to Liebel's conduct on August 4, 2000, he was constructively discharged from his employment with WenDover. The defendants now argue that Liebel's alleged comments do not rise to the level of race discrimination, nor are his alleged actions in any way indicative of racially discriminatory animus. For the following reasons, the court must disagree that a grant of summary judgment is appropriate on this issue.

*3 To establish a right to relief under Section 1981, a plaintiff must show: (1) that he belongs to a racial minority; (2) "an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in" Section 1981. [FN2] *Pryor v. National Collegiate Athletic Assoc.,* 288 F.3d 548, 569 (3d Cir.2002). Moreover, to establish a claim for constructive discharge, a plaintiff must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1084 (3d Cir.1996).

> FN2. The standard for establishing an "intent to discriminate on the basis of race" is identical in the Title VI and Section 1981 contexts. *See e.g. Lewis v. University of Pittsburgh,* 725 F.2d 910, 915, n. 5 (3d Cir.1983).

In the present case, there is no dispute that Stewart is African American. The defendants do dispute, however, that Liebel possessed an intent to discriminate against Stewart. To this end, they contend that, assuming that Liebel actually made the comments in question, they are innocuous and racially-neutral.

The Third Circuit Court of Appeals has recognized

that comments such as "all of you" and "that one in there" and "one of them" may be "code words" for discriminatory animus. *See e.g. Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3d Cir.1996); *Abramson v. William Patterson College,* 260 F.3d 265, 278 (3d Cir.2001). Moreover, as the Third Circuit has stated, "there are no talismanic expressions which must be invoked as a condition-precedent to the application of laws designed to protect against discrimination." *See Aman,* 85 F.3d. at 1083. In the present case, the court cannot say that a reasonable jury would be unable to find that the alleged statements at issue, coupled with the alleged physical altercation, sent a clear message and carried the distinct tone of racial motivations and implications. Thus, while the court disagrees with Stewart that the case for racial animus is as clear as he suggests, it is not prepared to divest him of his day in court on this ground.

The defendants next argue that Stewart has failed to demonstrate that a reasonable person in his place would have resigned. In support of this argument, they point out that it was Stewart's mother who decided that he would not continue to work for Wendy's. The defendants further argue that, at his deposition, Stewart acknowledged that he was "not sure" whether he wanted to go back. *See* Tr. of Stewart Dep. at 255. The court concludes, however, that what remains important for the resolution of the present motion is that Stewart did, in fact, resign, ostensibly as a result of Liebel's alleged actions. Additionally, given the allegations of racial animus and physical contact between Stewart and Liebel, the court is not persuaded to the defendants' point of view that no reasonable person in his position would have resigned.

B. Liebel's Individual Liability

The defendants next contend that, under Section 1981, a third party may only be liable if that party "intentionally interferes, on the basis of race, with another's right to make and enforce contracts, regardless of whether the employer or anyone else may also be liable." ' *Cimino v. Delaware Dep't of Labor,* 2002 WL 265095, at *5 (D.Del. Feb. 25, 2002) (quotation and citation omitted). Their only support for this argument, however, is contingent on the court having first found that there is no evidence of racial discrimination. Because the court has already found that there is sufficient evidence of racial animus to deny the motion for summary judgment, and because it is Liebel's actions which gave rise to this case, the court concludes that Liebel

may be held liable under Section 1981. *See Cardenas v. Massey,* 269 F.3d 251, 268 (3d Cir.2001) (observing that the Third Circuit recognizes individual liability under Section 1981).

C. The Assault and Battery Claims are Preempted as to Wendover

*4 Count II of the complaint seeks to hold Liebel and WenDover liable for intentional assault and battery. WenDover now argues that the exclusivity provision of the Delaware Workers' Compensation Act ("the Act") limits an employee's recovery for personal injuries arising out of, and during, the course of employment to the compensation provided under the Act. [FN3] *See* 19 DEL. C. § 2304; *Konstantopoulos v. Westvaco Corp.,* 690 A.2d 936, 938 (Del.1996).

> FN3. It does not appear that Liebel has moved for summary judgment on this ground. *See e.g.* Defendants' Opening Brief (D.I.36) at 18-19. Accordingly, the court will address preemption only as to WenDover.

In response, Stewart maintains that the Delaware Supreme Court has effectively overruled its opinion in *Westvaco* with its more recent decision in *Schuster v. Derocili,* 775 A.2d 1029, 1037 (Del.2001). He also argues that public policy dictates that his assault and battery claims should not be preempted because he was a minor at the time of the incident. For the following reasons, however, the court concludes that both of these argument must fail.

Delaware courts have recognized that, "... an injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment, or as a reasonable relationship to it." *Westvaco,* 690 A.2d at 938. While subsection 2301(15)(b) excludes from coverage under the Act "... any injury caused by the willful act of another employee directed against the employee by reasons personal to such employee and not directed against the employee or because of the employee's employment," this exception does not apply in this case. Here, Stewart alleges that, while working for WenDover and removing trash from a trash can, Liebel approached him, criticized him for his trash removal, and allegedly pushed his head into either the trash can or the trash receptacle. As this case clearly concerns actions related to the conditions existing in, or created by, the workplace, the Act must apply. *See e.g. Westvaco,* 690 A.2d at 938-39 (holding that a

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1918287 (D.Del.), 91 Fair Empl.Prac.Cas. (BNA) 1296
**(Cite as: 2003 WL 1918287 (D.Del.))**

claim for assault and battery stemming from alleged sexual harassment and sexual assault were not excluded from the coverage of the Act.); *see also Nelson v. Fleet National Bank,* 949 F.Supp. 254, 259 (D.Del.1996) (holding that the plaintiff's claim for intentional infliction of emotional distress resulting from sexual harassment by a co-worker, where there was no relationship outside the workplace between the parties, was compensable under the Act).

Although Stewart argues that the Delaware Supreme Court's opinion in *Schuster* mandates a different conclusion, *Schuster* is not even arguably analogous. In that case, the court reviewed whether the plaintiff had articulated a public policy violation that permitted her to proceed on her claim of breach of the covenant of good faith and fair dealing. *See Schuster,* 775 A.2d at 1038. Rather than holding that a public policy violation exception applied to the exclusivity provision of the Act, the court actually noted that the "Delaware Workers' Compensation Statute is an ideal example of the General Assembly's intention to preclude common law claims, when it chooses to do so.... Exceptions have been found only where the claim is based on a bad faith breach of contract...." *Id.* at 1038. More persuasively still, the *Schuster* court specifically noted that the issue before it concerned a breach of contract claim, not a tort claim. *See id.* at 1033, n. 11 (citing the *Westvaco* case for the proposition that the Act precludes an employee from asserting a common law tort claim against her employer for a claim of sexual harassment.). Thus, the court finds Stewart's argument that *Schuster* controls the present issue to be unpersuasive.

\*5 Finally, as to Stewart's second argument that public policy dictates that the court should not apply the Act, that argument too is unpersuasive. Stewart has cited to no case law which would permit the court to supplant the clear language of the Act merely because he is a minor. Thus, the court concludes that Stewart's state law claims against WenDover are barred by the exclusivity provision of the Act.

D. Issue Preclusion

Stewart claims that Liebel is barred from relitigating the essential issue of his criminal trial, namely, "whether he mistreated Bryan on the day in question in a manner which would offend any reasonable person." In response, Liebel argues that the charge of "offensive touching" does not involve issues identical to those required to establish civil assault or battery. For the following reasons, the court must agree.

"The doctrine of issue preclusion ... derives from the simple principle that 'later courts should honor the first actual decision of a matter that has been actually litigated." ' *Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,* 63 F.3d 1227, 1231 (3d Cir.1995). The doctrine ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Id.* When a party seeks to rely upon a state court judgment to preclude relitigation of the same issue in federal court, federal courts must look to the law of the state to determine whether the state would give the judgment preclusive effect in its own courts. *See Bailey v. Ness,* 733 F.2d 279, 281 (3d Cir.1984).

In the State of Delaware, the test for applying the issue preclusion rule "requires that (1) a question of fact essential to the judgment, (2) be litigated and (3) determined (4) by a valid and final judgment." *Messick v. Star Enterprises,* 655 A.2d 1209, 1211 (Del.1995). Moreover, a criminal conviction may be given preclusive effect in a subsequent civil action if the question raised in the civil suit was "distinctly put in issue and directly determined in the criminal prosecution." *See Emich Motors Corp. v. General Motors, Corp.,* 340 U.S. 558, 568-69 (1951).

The crime of offensive touching is set forth in Title 11 of the Delaware Code, Section 601(a)(1). That section states that a person is guilty of offensive touching when the person "[i]ntentionally touches another person either with a member of his or her body or with any instrument, knowing that the person is thereby likely to cause offense or alarm to such person." *See* 11 DEL. C. § 601(a)(1). In contrast, civil assault is the "attempt by a person, in a rude and revengeful manner, to do an injury to another person, coupled with the present ability to do it." *See Lloyd v. Jefferson,* 53 F.Supp.2d 643, 672 (D.Del.1999) (quoting *St. Anthony's Club v. Scottsdale Ins. Co.,* 1998 WL 732947, at \*3 (Del.Super.Ct. July 15, 1998)). Civil battery is the intentional, unpermitted contact upon the person of another, which is harmful or offensive. *See Brzoska v. Olson,* 668 A.2d 1355, 1360 (Del.1995). Lack of consent is an essential element of battery. *See id.*

\*6 In the present case, Stewart cannot make a colorable argument that, because Liebel was found guilty of offensive touching, he is thereby precluded from now arguing that he is not guilty of assault and battery, nor does the court understand Stewart to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 5
Not Reported in F.Supp.2d, 2003 WL 1918287 (D.Del.), 91 Fair Empl.Prac.Cas. (BNA) 1296
**(Cite as: 2003 WL 1918287 (D.Del.))**

make such an argument. Thus, as the elements for these various offenses are clearly different, the court concludes that Liebel is not collaterally estopped from litigating the assault and battery claims simply because he was previously found guilty of offensive touching. To the extent that Liebel wishes to argue that the offensive touching conviction, or findings related thereto, should not be admissible into evidence in the present case, that issue is more properly the subject of a motion in limine.

V. CONCLUSION

After considering the parties' arguments, the court concludes that Stewart has adduced sufficient evidence to withstand a motion for summary judgment on his Section 1981 claim, including his claim against Liebel individually. Although Stewart's assault and battery claim against WenDover is barred by the Delaware Workers' Compensation Act, the issue preclusion rule will not bar Liebel from litigating Stewart's assault and battery claim against him in the present case.

For the aforementioned reasons, IT IS HEREBY ORDERED that:
   1. The Defendants' Motion for Summary Judgment (D.I.36) is GRANTED in part, and DENIED in part.

Not Reported in F.Supp.2d, 2003 WL 1918287 (D.Del.), 91 Fair Empl.Prac.Cas. (BNA) 1296

**Motions, Pleadings and Filings (Back to top)**

• 1:02CV00334 (Docket) (May. 02, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 21526993 (Del.Super.)
**(Cite as: 2003 WL 21526993 (Del.Super.))**

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware.
Catherine D. MURDOCH, As Next Friend of
Amanda E. Murdoch, A Minor Child
v.
CAMP ARROWHEAD CHURCH CAMP, An
Unincorporated Association, The Diocesan
Council, Inc., A Delaware Corporation, D/B/A The
Episcopal Diocese of Delaware
and Camp Arrowhead Church Camp; Gabriel Lee
Clouser; and Nanese A. Hawthorne
**No. Civ.A. 02C-06-018.**

June 11, 2003.

Dear Counsel:

BRADLEY, J.

*1 This is the Court's opinion on Defendant Nanese
Hawthorne's Motion for Judgment on the Pleadings
and to Dismiss for Failure to State a Claim and
Defendants Camp Arrowhead Church Camp, the
Diocesan Council, Inc., and the Episcopal Diocese of
Delaware's Motion to Dismiss in this personal injury
action. [FN1] For the reasons stated herein, the
Defendants' Motions are granted and Plaintiff's
complaint is dismissed pursuant to 19 Del. C. §
2304, the exclusivity provision of Delaware's
Workers' Compensation law.

> FN1. Defendant Gabriel Lee Clouser does
> not oppose his co-defendants' Motions to
> Dismiss and did not file a response.

FACTUAL BACKGROUND

In June 2000, Amanda E. Murdoch (the "Daughter"),
a minor, was employed as a camp counselor by Camp
Arrowhead Church Camp ("Camp Arrowhead") in
Lewes, Delaware. The Daughter was fifteen years old
at the time of her employment. Camp Arrowhead is
an unincorporated association owned and operated by
The Diocesan Council, Inc. (the "Diocesan Council").
The Daughter, her mother, Catherine D. Murdoch
(the "Mother"), and Camp Arrowhead's director
signed a Staff Employment Agreement (the

"Agreement") on May 5 and 31, 2000, respectively.
The Daughter agreed to work from June 11 to August
14, 2000, as a camp counselor. The Agreement stated
that "food and lodging will be provided" to the
Daughter. Furthermore, the Agreement stipulated:

> staff members will be *required to remain on the
> premises* of the camp, excepting special nights
> given to the entire staff at times during the
> summer, or, emergencies.
> Since the proper supervision of children in the
> camp is a twenty-four hour job, you will be *on call
> at all times* at the discretion of the Camp Director
> or other authorized persons. [FN2]

> > FN2. The Murdochs dispute these hours,
> > alleging the Daughter only worked from 8
> > a.m. until 8 p.m.

The Murdochs allege the Daughter was sexually
propositioned by Mark ("Mark"), [FN3] an
employee of Camp Arrowhead, on June 13, 2000.
The Daughter claims that the following night, during
an overnight staff camping trip on Camp Arrowhead's
grounds, she was sexually assaulted. Nanese A.
Hawthorne ("Hawthorne"), a supervisor at Camp
Arrowhead, denies that an overnight staff camping
trip occurred, but concedes there was a staff campfire
event. The Daughter allegedly informed Hawthorne
of Mark's unwanted sexual advances on June 15,
2000, whereupon Hawthorne urged her to deal
independently with Mark's advances. Hawthorne
denies this conversation. According to the Murdochs,
Hawthorne's failure to investigate or respond to the
Daughter's complaints about Mark was in reckless
disregard of the Daughter's personal rights and safety.
The Murdochs also claim that on June 21, 2000, the
Daughter approached Hawthorne and requested to
move to another cabin because she was the sole
occupant of her cabin. It is the Murdochs' contention
that Hawthorne's failure to respond to the Daughter's
concerns led to a sexual relationship between the
Daughter and Gabriel Lee Clouser ("Clouser"), a
nineteen year old employee of Camp Arrowhead. The
Daughter considered Clouser the camp's night
supervisor, but Clouser and Hawthorne state he only
supervised a small maintenance staff. The Daughter's
relationship with Clouser allegedly began after she
sought Clouser's advice following the alleged sexual
assault at the campfire event. Also, the Daughter
confided to Clouser that she did not want to be her
cabin's sole occupant and asked Clouser to move her

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 21526993 (Del.Super.)
**(Cite as: 2003 WL 21526993 (Del.Super.))**

into a cabin with other female staff members. Clouser neither investigated the Daughter's claim of sexual assault nor moved her to another cabin. In spite of his inaction, Clouser assured the Daughter that he would protect her. Thereafter, from June 22, 2000, to July 18, 2000, the Daughter and Clouser engaged in a sexual relationship. _FN4_ All encounters occurred in the Daughter's cabin. During this relationship, the Daughter became withdrawn and emotionally upset. She eventually left Camp Arrowhead. According to the Murdochs, the Daughter's relationship with Clouser led to emotional, psychological, and physical injuries, the loss of self-esteem, and pain and suffering. Hawthorne did not investigate the alleged changes in the Daughter's behavior, as Hawthorne contends she was not informed of the sexual relationship or the Daughter's mental health issues.

> FN3. The Murdochs do not know Mark's last name.

> FN4. Clouser admits that he had "a relationship" with the Daughter, but he does not elaborate on the character of this involvement.

### PROCEDURAL BACKGROUND
**\*2** The Mother, as the Daughter's Next Friend, filed suit against Camp Arrowhead, the Diocesan Council, d/b/a The Episcopal Diocese of Delaware and Camp Arrowhead, Clouser, and Hawthorne on June 11, 2002. The Mother alleges that actions by Camp Arrowhead, the Diocesan Council, Clouser, and Hawthorne recklessly and negligently disregarded the Daughter's personal rights and safety. The Murdochs also allege that Clouser's decision to engage in a sexual relationship with the Daughter intentionally inflicted emotional distress upon the Daughter, invaded the Daughter's privacy, and was negligence per se. Clouser has filed cross-claims for contribution and indemnification from his co-defendants.

Hawthorne filed a Motion for Judgment on the Pleadings and to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted on December 13, 2002. Hawthorne alleges that Delaware's Workers' Compensation system ("Workers' Compensation") bars this negligence claim against her because she, like the Daughter, was employed by Camp Arrowhead. Hawthorne dismisses the notion she had a duty to protect the Daughter. Thus, Hawthorne contends the Murdochs have failed to state a claim for which relief can be granted. Furthermore, Hawthorne denies any knowledge of the sexual assaults on the Daughter or the Daughter's declining

mental health.

Camp Arrowhead and the Diocesan Council followed with a Motion to Dismiss on December 16, 2002. Camp Arrowhead and the Diocesan Council allege that the Murdochs' tort complaint is barred by Workers' Compensation's exclusivity provision because the Daughter was injured in the scope and course of her employment with Camp Arrowhead. Furthermore, as Camp Arrowhead did not intentionally harm Murdoch, there are no exceptions that would remove the Daughter from the bar created by 19 Del. C. § 2304.

The Murdochs contend that the Daughter was off-duty and not acting in the course of her employment when she was sexually assaulted by Clouser. They argue the personal dispute exception to the exclusivity provision applies to this situation because the Daughter's relationship with Clouser was personal, and not related to her job. According to the Murdochs, the fact both parties were employed by Camp Arrowhead is irrelevant and does not grant the Workers' Compensation Board jurisdiction over this dispute.

### STANDARD OF REVIEW
Although Defendants Hawthorne, Camp Arrowhead, and the Diocesan Council have filed motions to dismiss this lawsuit, the parties have submitted evidence outside of the pleadings, including an employment contract and correspondence from Clouser to the Daughter. Consequently, the Motions to Dismiss will be considered motions for summary judgment. Summary judgment may be granted only when no material issues of fact exist, and the moving party bears the burden of establishing the non-existence of material issues of fact. _Moore v. Sizemore,_ 405 A.2d 679, 680 (Del.1970). Once the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of material issues of fact. _Id._ at 681. Where the moving party produces an affidavit or other evidence sufficient under Super. Ct. Civ. R. 56 in support of its motion and the burden shifts, then the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial. Super. Ct. Civ. R. 56(e); _Celotex Corp. v. Catrett,_ 477 U.S. 317, 322-23 (1986). If, after discovery, the non-moving party cannot make a sufficient showing of the existence of an essential element of his or her case, then summary judgment must be granted. _Burkhart v. Davies,_ 602 A.2d 56, 59 (Del.1991), _cert. den.,_ 112 S.Ct. 1946 (1992); _Celotex Corp. v. Catrett, supra._ If, however, material

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 21526993 (Del.Super.)
(Cite as: 2003 WL 21526993 (Del.Super.))

Page 3

issues of fact exist or if the Court determines that it does not have sufficient facts to enable it to apply the law to the facts before it, then summary judgment is inappropriate. *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del.1962). This Court will now determine whether summary judgment is appropriate in this instance.

### DISCUSSION

*3 At issue is whether the Murdochs' action against the Defendants is barred by 19 *Del. C.* § 2304, Workers' Compensation's exclusivity provision. According to 19 *Del. C.* § 2304:

Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by [the Workers' Compensation statute] to pay and to accept compensation for personal injury or death by accident *arising out of and in the course of employment,* regardless of the question of negligence and to the exclusion of all other rights and remedies.

Workers' Compensation guarantees employees compensation for work-related injuries without regard to fault, and relieves the expense and uncertainty of civil litigation. *Kofron v. Amoco Chems. Corp.,* 441 A.2d 226 (Del.1982). Since its inception, Workers' Compensation has been compulsory and has covered every employer and employee. *Walker v. Patterson,* 325 F.Supp. 1024 (D.Del.1971). Workers' Compensation establishes the rights and obligations of employers and employees with respect to injuries occurring at work. *Blanco v. Kent Gen. Hosp.,* 190 A.2d 277 (Del.Super.), aff'd. 195 A.2d 553 (Del.1963).

According to 19 *Del. C.* § 2304, the Murdochs' tort lawsuit is barred if the Defendants can prove: "(1) plaintiff is an employee, (2) plaintiff suffered a 'personal injury' and (3) the injury arose out of and in the course of employment." *Rose,* 668 A.2d 782, 786 (quoting *Battista v. Chrysler Corp.,* 454 A.2d 286, 288 (Del.Super.1982)). The exclusivity provision bars common-law remedies against an employer, *Powell v. Interstate Vendaway, Inc.,* 300 A.2d 241 (Del.Super.1972), and suits by one employee against a fellow employee for damages relating to a condition compensable under Workers' Compensation, *Ward v. GMC,* 431 A.2d 1277 (Del.Super.1981). It is undisputed that the Daughter was an employee and that she suffered a personal injury that is compensable under the workers' compensation statute. *See Konstantopoulos v. Westvaco Corp.,* 690 A.2d 936 (Del.1996) (sexual harassment covered by the workers' compensation act).

For an employee to receive Workers' Compensation benefits, a causal relationship between the injury and the employment must exist. *Storm v. Karl-Mil,* 460 A.2d 519 (Del.1983). Even if an injury occurs at the time and place of employment, employment may not be considered the cause of injury. *Ward v. GMC,* 431 A.2d 1277 (Del.Super.1981). The injury must occur "in the course of employment" and "arise out of the employment" to be compensable under Workers' Compensation. *Storm v. Karl-Mil, Inc.,* 460 A.2d 519 (Del.1983); *see also GMC v. Huester,* 242 A.2d 314 (Del.Super.1968), overruled on other grounds, *Chrysler v. Viglino,* 260 A.2d 161 (Del.1969). Thus, the two phrases are not synonymous. *Dravo Corp. v. Strosnider,* 45 A.2d 542, 543 (Del.Super.1945). In order for an injury to arise "in the course of employment," the offending act must arise from "those things that an employee may reasonably do or be expected to do within a time during which he is employed, and at a place where he may reasonably be during that time." *Id.* at 543-44; *see also Rose v. Cadillac Fairview Shopping Ctr. Prop. (Del.) Inc.,* 668 A.2d 782, 786 (Del.Super.1995). An injury arises "out of" employment if the injury relates to "the nature, conditions, obligations or incidents of the employment, or has a reasonable relation to it." *Id.* at 544.

*4 *Rose v. Cadillac Fairview Shopping Ctr. Prop. (Del.) Inc.,* 668 A.2d 782, 786 (Del.Super.1995), describes the outer limits of Workers' Compensation. In *Rose,* the plaintiff's employer, complying with the terms of the lease with its landlord, instructed its employees to park in a specific section of a parking lot. The plaintiff followed her employer's directions. One day the plaintiff arrived at work early, as she planned to read the newspaper. Unfortunately, before plaintiff could exit her car, she was robbed and kidnaped. The assailant raped the plaintiff and then returned her to the parking lot. Plaintiff sought damages from her employer, the landlord, and others. [FN5] The employer moved to dismiss the claim, arguing that the tort action was barred by the exclusivity provision of the workers' compensation statute. This Court agreed with the employer's contention. The parking lot was a part of the employer's premises, the employer required the employees to use the parking lot, and the employer knew the area was open to the public. Even though the plaintiff arrived 50 to 55 minutes before her shift began, her behavior was reasonable. The court found plaintiff's injury arose out of employment because she was "in a place where she could be expected to be" when the injury occurred. *Rose,* 668 A.2d at 790.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 21526993 (Del.Super.)
**(Cite as: 2003 WL 21526993 (Del.Super.))**

Page 4

FN5. The assailant was never identified.

The Daughter's alleged injuries have a closer relationship to her employment than the attenuated circumstances described in *Rose.* The Daughter resided in a cabin provided by Camp Arrowhead, her employer. The Agreement required the Daughter to reside at Camp Arrowhead and remain on-call 24-hours a day. The Daughter's presence in the cabin was reasonable, as the job required her to be on the premises. Thus, whether she was actively performing work-related tasks at the time of her injury is inconsequential. Furthermore, the relationship that developed between the Daughter and Clouser was foreseeable. The Daughter, a teenager, was free from parental supervision and, as a counselor, given a measure of independence. Illicit behavior between employees is foreseeable in this situation. Thus, the incidents the Murdochs complain of arose from and were in the course of the Daughter's job as a summer counselor at Camp Arrowhead. Although the harm allegedly endured by the Daughter is unfortunate, this Court is not the proper forum to examine the Defendants' liability. [FN6]

> FN6. The "bunkhouse rule," the reach of which has not been examined by the courts of this State, supports this conclusion. According to the bunkhouse rule:
> an injury to an employee living ... on employer's premises ... pursuant to an express or implied requirement of the contract of hiring, if reasonably attributable or incidental to the nature of the employment, or to the conditions under which he lives in the performance of his duties, is to be regarded as having arisen out of and in the course of such employment for purposes of workers' compensation.
> 82 AM.JUR.2D *Workers' Compensation* § 274 (1992).

## CONCLUSION

Defendants Hawthorne, Camp Arrowhead and the Diocesan Council's Motions for Dismissal are granted for the reasons previously stated. This Court is barred by 19 *Del. C.* § 2304 from hearing the Murdochs' complaint.

Not Reported in A.2d, 2003 WL 21526993 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant Communications

Construction Group, LLC's Memorandum of Law in Support of Their Motion for Partial

Dismissal of the Complaint was served upon:

>           Ronald G. Poliquin
>           Young, Malmberg & Howard, P.A.
>           30 The Green
>           Dover, DE 19901
>           (302) 672-5600
>           Delaware Bar I.D. No. 4447
>
>           *Attorney far Plaintiffs*

this 24th day of October, 2006 via United States mail, postage prepaid.

>                          /s/ Michael P. Kelly
>                          Michael P. Kelly
>                          (DE Bar ID #2295)

+