IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JASON MCLEAN and            )
BRIAN COLEMAN,              )
                            )
        Plaintiffs,         )
                            )
v.                          )       Civ. No.: 06-617-SLR
                            )
COMMUNICATIONS              )
CONSTRUCTION GROUP, LLC.,   )
                            )
        Defendant.          )


**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**


**YOUNG, MALMBERG & HOWARD, P.A.**


/s/ Ronald G. Poliquin
Ronald G. Poliquin, Esquire
I.D. No. 4447
30 The Green
Dover, DE  19901
(302) 672-5600
*Attorney for Plaintiffs*


DATED:  December 28, 2007

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES..................................................................ii

NATURE AND STAGE OF PROCEEDINGS...............................................1

SUMMARY OF ARGUMENT...............................................................2

STATEMENT OF FACTS....................................................................3

ARGUMENT...............................................................................4-9

    I.     THE PLAINTIFFS HAVE ESTABLISHED A PRIMA FACIE CASE FOR
          RACIAL DISCRIMINATION.....................................................4-8

    II.    CCG SHOULD BE HELD STRICTLY LIABLE FOR A FOREMAN'S
          HARASSMENT....................................................................8-9

CONCLUSION..............................................................................10

## **TABLE OF AUTHORITIES**

Page

CASES

Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 288 (3d Cir.2001)....5

Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir.1996)..................4,6

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998)......................................8

Celestine v. Petroleos de Venezuella, 266 F.3d 343, 353 (5th Cir. 2001)....................9

Faragher v. City of Boca Raton, 524 U.S. 775 (1998)...........................................8

Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)........................................4

Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 178 (3d Cir.1997)................5

Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997)....................5

Jensen v. Potter. 435 F.3d 444 (P.A.) 2006).....................................................5

Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997)...........................5


STATUTES

Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq........................5

## **NATURE AND STAGE OF PROCEEDINGS**

Brian Coleman and Jason McLean ("plaintiffs") commenced this Title VII action on October 2, 2006 contending that they were the subject of racial harassment and retaliation. Defendant Communications Construction Group, LLC ("defendant CCG") answered the complaint on October 24, 2006. On November 28, 2007, both plaintiffs and defendant filed motions for summary judgment. This is plaintiffs' reply brief in support of plaintiffs' motion for partial summary judgment.

1

## SUMMARY OF THE ARGUMENT

I.    The racial slur disclosed the intent of Dodson's prior actions contributing to

the hostile work environment.

II.    There is substantial evidence demonstrating temporal proximity of

defendant's acts and retaliatory animus against plaintiffs.

III.    Bradley Dodson was a supervisor of plaintiffs whose harassment led to

plaintiffs' transfer and termination.

## STATEMENT OF FACTS

Plaintiffs reiterate the statement of facts previously stated in plaintiffs' briefs.   In addition, plaintiffs assert the following facts:

McLean and Dodson were punished for reporting Brad Dodson's comment.  Two uninterested employees confirmed that Brad Dodson called the plaintiffs' "two dumb niggers". (Investigator Notes attached as Exhibit A)  Dodson only received a warning for his actions. (Employee Warning Report attached as Exhibit B). Dodson had previous problems with the company. During Dodson's employment with defendant CCG, he was terminated for crashing a truck into a trailer and "back talking" to a supervisor (1-18-90 Employee Warning Report attached as Exhibit C). Another time, Dodson failed to give two weeks notice before quitting employment with CCG. (Record of Separation attached as Exhibit D) Brad Dodson had a history of problems during his employment at CCG. (Brad Dodson Employment File Notes attached as Exhibit E) Alternatively, Coleman and McLean were also given warnings concerning the incident for not following company policy and leaving the job site. (Employee Warning Reports attached as Exhibit F)

Bradley Dodson's actions led to his arrest and subsequent plea agreement (5-31-05 Police Report attached as Exhibit G). Because of the nature of Brad Dodson's crime, the police contemplated charging Brad Dodson with a hate crime.

# ARGUMENT

## I. Plaintiffs have established a prima facie case for racial discrimination

"In order to establish a claim for employment discrimination due to an intimidating or offensive work environment, a plaintiff must establish, by the totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir.1996) (internal citations omitted). To establish the existence of such an environment, Plaintiff must show: "(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive or regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability." Id. (internal citations omitted).

The Supreme Court has stated that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

Words of a supervisor can reveal the intent of the speaker's actions. See Aman. Title VII requires that employers prevent racist views from affecting work environment either by influencing employment decisions or creating a hostile work environment; this is true no matter what form discrimination takes-overt, subtle or otherwise. Civil Rights

4

Act of 1964, § 701 et seq., <u>42 U.S.C.A. § 2000e</u> et seq. *Id.* In <u>Aman</u>, the Court stated that words are relevant to reveal the intent of the speaker.

Retaliatory harassment can be considered for a claim under Title VII. <u>Jensen v. Potter.</u> 435 F.3d 444 (P.A.) 2006). In <u>Jensen</u>, the Court declared that "retaliatory harassment" which is severe and pervasive enough to create a hostile work environment is cognizable under Title VII.

In determining whether conduct was retaliatory, cases have tended to focus on two factors: (1) the "temporal proximity" between the protected activity and the alleged discrimination and (2) the existence of " 'a pattern of antagonism in the intervening period.' " <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920-21 (3d Cir.1997). Timing alone raises the requisite inference when it is "unusually suggestive of retaliatory motive," but even if "temporal proximity ... is missing, courts may look to the intervening period for other evidence of retaliatory animus." <u>Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997)</u>. Despite this focus, "[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." <u>Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 178 (3d Cir.1997)</u> ("The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific.").

It is improper to isolate incidents of facially neutral harassment and conclude, one by one, that each lacks the required discriminatory animus. See <u>Aman, 85 F.3d at 1081-84</u>. Because "it is often difficult to determine the motivations of an action[,] .... [the] discrimination analysis must concentrate not on individual incidents, but on the overall scenario."<u>Id.</u>

The racial slur disclosed the intent of Dodson's prior actions. Defendant minimizes the harassment suffered by plaintiffs as "one isolated incident". However, plaintiffs endured harassment prior to Bradley Dodson's racial epithet. Prior to the incident, Bradley Dodson signaled the plaintiffs out by calling them "yahoos" when criticizing their work. He reminded plaintiffs on a daily basis that he had the power to fire them. A reasonable jury could conclude that Bradley Dodson's prior hostility toward plaintiffs was race-based. Dodson's later comments to co-workers that plaintiffs were "two dumb niggers" demonstrate the intent of his prior actions.

The Court should not isolate the incident involving Brad Dodson telling co-workers that they were "two dumb niggers" from the defendant's subsequent acts. Dodson's racial slur served as the catalyst for further retaliatory discrimination against the plaintiffs. Certainly, Dodson's physical confrontation with the plaintiffs constitutes retaliatory harassment as it was in direct response to their inquiry of his statement. When plaintiffs inquired as to whether or not Dodson in fact said the racial epithet, he physically attacked McLean by repeatedly poking him in the chest. This led to Dodson's arrest and subsequent plea agreement. In addition, the Court should consider the harassment suffered by plaintiffs as physically threatening.

There is substantial evidence of temporal proximity and retaliatory animus against plaintiffs. CEO Jonathan Gates was aware of plaintiffs' complaints concerning harassment. Despite five years of employment, Gates made vague threats as to Coleman's future with the company. Prior to this incident, Coleman had no negative reviews in his file with CCG.

6

In addition, Brad Dodson's brother, David Dodson was involved in the decisions relating to plaintiff. Brad Dodson continually noted his lineage throughout his harassment of the plaintiffs. Thus acts by the defendant can be inferred as retaliatory harassment committed against plaintiffs. These acts constitute discrimination as they unreasonably interfered with plaintiffs' work performance. Immediately after reporting the incident, McLean was relegated to sweeping sidewalks and cleaning dirt out of people's yards. The position paid McLean half as much as his former position. When Coleman and McLean were transferred to West Chester. their rate schedule was inferior and they were forced to work more days to make the same pay. Also, Coleman and McLean were initially allowed a truck to travel to their new worksite. However; CCG's CEO Jonathan Gates quickly took the truck away. All other foremen had company trucks.

Dodson's statement was of particular severity and humiliation. "Nigger" is a word so fraught with an infamous history of racial animus and abuse as to be unacceptable in civilized discourse, including discourse in the work place. See <u>Aman</u>, 85 F.3d at 1081. The statement was made to plaintiffs' co-workers in direct reference to plaintiffs' work performance.

Secondly, Dodson's statement was followed up with physically threatening behavior. The incident included more than just a verbal altercation. Upon confronting Brad Dodson about the incident, Dodson immediately starts striking Coleman in the chest with his finger.

The discrimination interfered with the plaintiffs' work performance. The work in West Chester was inferior to the New Castle worksite. The transfer resulted in a substantial loss of salary. Plaintiffs were making less money for the same work in West

7

Chester. The transfer also resulted in longer hours, higher costs for room and board, and higher food costs. Plaintiffs worked four-day weeks in New Castle and six-day weeks in West Chester. McLean requested an explanation from HR concerning his transfer, but was never given one. The travel time was also much longer for both McLean and Coleman at West Chester.

There was a substantial disparity in how the defendant treated plaintiffs and how they treated Bradley Dodson after the incident. This both shows affirmative discrimination and defendant's racial animus for their decisions. Two uninterested employees confirmed that Brad Dodson called the plaintiffs' two dumb niggers. (Exhibit A) However, McLean and Dodson were punished for reporting Brad Dodson's comment. (Exhibit F). Dodson only received a warning for his actions. (Employee Warning Report attached as Exhibit B). While Dodson was unaffected, plaintiffs were transferred and later terminated after the incident.

Dodson has a history of problems with the company. He was previously terminated for crashing a truck into a trailer and "back talking" to a supervisor (Exhibit C). Brad Dodson had a history of problems during his employment at CCG. (Exhibit E) Alternatively, Coleman and McLean had no such problems. Coleman worked five straight years with the company without problems. Yet, Dodson was still with the company after plaintiffs were terminated.

### III. CCG should be held strictly liable for a foreman's harassment

An employer is strictly liable for harassment by a supervisor that culminates in a tangible employment action (e.g., discharge, demotion or undesirable job reassignment). Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and Burlington Industries, Inc. v.

Ellerth, 524 U.S. 742 (1998). If the harasser is a supervisor "with immediate (or successively higher) authority over the harassment victim," then, subject to the employer's affirmative defense, the plaintiff "needs to satisfy only the first four of the elements listed above." Celestine v. Petroleos de Venezuella, 266 F.3d 343, 353 (5th Cir. 2001).

Here, Brad Dodson had control over plaintiffs' job even helping determine their pay rate. Bradley Dodson was a foreman with CCG. A foreman is a boss of a crew who supervises anywhere from four to six employees. Bradley Dodson was the plaintiffs' direct boss. Coleman and McLean were the only members of his crew. A foreman would be given work by a project supervisor and decide how to go about doing the work. A foreman would give feedback to the project supervisor concerning members of his crew. A foreman's input was sought for evaluations of crewmembers that affected pay rates.

In addition, both Dodson and plaintiffs received the same punishment after the incident- written warnings. However, the plaintiffs were transferred to inferior working conditions and then subsequently terminated. While plaintiffs suffered this tangible work decision, Brad Dodson continued to be employed by the company.

## CONCLUSION

The Court should grant plaintiffs' motion for partial summary judgment as to defendant's discrimination and their liability for the actions of Brad Dodson.

Respectfully submitted,

/s/ Ronald G. Poliquin
Ronald G. Poliquin, Esquire
I.D. No. 4447
30 The Green
Dover, DE 19901
302-672-5600
*Attorney for Plaintiffs*

Dated: December 28, 2007

# EXHIBIT A

May 27th, 2005 (Friday)

## Conversation between Bob Koch, Joseph Tatsch, & Brad Dodson

Bob Koch's statement:

- Bob and Brad parked the equipment, Bob said, "see you later."
- Brad then said, "must be nice, you don't have to work with two dumb niggers."

Brad Dodson's statement:

- Brad was having a conversation with Bob and they were discussing lawnmowers.
- Brad denies making any such comment.

Joseph Tatsch's statement:

- While walking by Brad and Bob, overheard them talking.
- He heard Brad say to Bob, "...dumb fucking niggers."
- Joseph kept walking and went back to work.

# EXHIBIT B

# Communications Construction Group, LLC.
## *Employee Warning Report*

Employee's Name   Brad Dodson       Date of Warning  6/20/05    Job #  5007

## Type of Violation

☐ Attendance    ☐ Safety Violation    ☐ Work Quality    ☒ Insubordination

☐ Lateness/Leave Early    ☒ Violation of Policy    ☐ Other _____

## Warning Information

Violation Date  **5**/31/05    Violation Time   Mid-Day  Location of Violation  New Castle, DE

| Company Explanation of Incident | Employee Statement |
|---|---|
| An allegation was made that Brad used a racially derogatory remark. Brad denies making the statement he was accused of making. Additionally, during a heated conversation with Brian Coleman, Brad used physical contact in an inappropriate manner. | ☒ I agree with the company's statement<br><br>☐ I disagree with the company's statement; <u>Explanation</u> |

*★If necessary, use the back of the form to complete your explanation ★*

## Action Taken As Result Of Warning

Brad violated CCG's Harassment policy by engaging in inappropriate physical contact with an employee. To the extent any statement Brad made was either racially derogatory or racially insensitive, that would constitue a further violation of CCG Policy. A copy of CCG's Harassment Policy is being reissued. If he should violate any CCG policy again, he will be subject to further discipline, up to and including termination.

## MUST BE COMPLETED

I have read and understand this warning and decision, and have had the opportunity to express my viewpoint.

Employee's Signature: _~signature~_    Date: 6/21/05

Signature of Person Preparing Warning: _Lisa Clemento_    Date: 6/17/05

Supervisor's Signature (if different): _John Slater_    Date: 6-21-05

D0491

# EXHIBIT C

DEPOSITION
EXHIBIT
DODSON -4
CMV-9/14/07

COM    NICATIONS CONSTRUCTION GR    ., INC.

# EMPLOYEE WARNING REPORT

Employee's Name **Brad Dodson**          Date of Warning **1-18-90**     JOB #: **199 E**

| Type of Violation | | |
|---|---|---|
| ☐ Attendance | ☒ Carelessness | ☒ Disobedience |
| ☐ Safety | ☐ Tardiness | ☐ Work Quality |
| ☐ Other_____ | | |

**W A R N I N G**

Violation: Date **1/18/90**

Violation: Time **5:45** a.m. / p.m.

Place Violation Occurred **ON THE JOB**

### Company Statement

BRAD, CRASHED TK #220 INTO TRAILER ON TK# 249 TWICE IN 3 MINUTES. IS NOT FOLLOWING FOREMANS INSTRUCTIONS & BACK TALKING TO BURT HILEMAN & DON BEICHNER.

### Employee Statement

Check Proper Box

☐ I concur with the Company's statement.

☐ I disagree with the Company's statement for the following reasons:

I have entered my statement of the above matter

Employee's Signature _____ Date_____

### Warning Decision

TERMINATED

Approved By _____
Name _____  Title _____  Date _____

### List All Previous Warnings Below
When Warned And By Whom

I have read this "warning decision" and understand it.

| Previous Warning: | 1st Warning |
|---|---|
| Date | _____ |
| Verbal | _____ |
| Written | _____ |
| Previous Warning: | 2nd Warning |
| Date | _____ |
| Verbal | _____ |
| Written | _____ |
| Previous Warning: | 3rd Warning |
| Date | _____ |
| Verbal | _____ |

Employee's Signature _____ Date _____

Signature of person who prepared warning / Title **Supervisor** / Date **1/18/90**

Supervisor's Signature **John R. Heng / Supervisor** 1/18/90   Date

**D0516**

### Copy Distribution

☐ Employee         ☐ Supervisor         ☐ Foreman
☐ Personnel Dept                        ☐ Union Rep

# EXHIBIT D

## COMMUNICATIONS CONSTRUCTION GROUP, INC.

### RECORD OF EMPLOYMENT SEPARATION

==================================================================

#152S    Job # _143_

Employee's Name: _BRAD DODSON_    SS# _____

Hire Date: _____    Actual Last Day Worked: _8-5-98_

"(X 8/3/98 Onaccue

==================================================================

8-13-98    N.A.    GA 8/3'    exhib 3/13/

#### REASON FOR SEPARATION

**Voluntary Resignation**
/ / To Attend School
/ / Medical
/ ✓ / Dissatisfied with job
/ / To Leave Area
/ / Personal or Domestic
/ / Other Employment
/ / Pregnancy
/ / Absent 3 consecutive days
     (job abandonment)
/ / Other
/ / Job Relocation Refused
/ / Lack of Work - Recall Date _____
/ / Leave of Absence - Start Date _____ Return Date_____

**Discharge**
/ / Under the influence
     of drugs/intoxicants
/ / Not Qualified
/ / Allowed to Resign in
     lieu of discharge
/ / Violation of rule
/ / Tardiness
/ / Absenteeism
/ / Insubordination
/ / Other

/ / If you prefer not to challenge this claimant's eligibility to
     receive benefits now, or in the future, please check box

==================================================================

Final Incident: _GAVE ONE WEEKS NOTICE_
_MUST CONTACT RICH FICKES BEFORE REHIRE_

Specific Details (Attach all related documents - warnings, resigna-
tions, medical forms, etc.)
_____
_____

List all payments employee will receive upon separation:
Severence _____    Holiday Pay _____    Vacation _____

Employees Signature: _____    Date: _____

Authorized Signature: _Malcolm Mem___    Date: _8-6-98_

Witness Signature: _____    Date: _____

CCG-010

D0520

# EXHIBIT E

Warning 1/18/90  Carelessness        terminated

transfer 1/19/90  insubordination

termination 10/12/90  Absent 3 consecutive days

termination 8/5/98  dissatisfied w/ job

general liability claim 8/29/00

auto damage claim 5/7/01

Warning 5/7/01  Safety violation

general liability claim 1/14/02

auto damage claim 5/5/03

# EXHIBIT F

# Communications Construction Group, LLC.

## *Employee Warning Report*

Employee's Name    Jason McLean                    Date of Warning    6/20/05        Job #    5007

### Type of Violation

☐ Attendance          ☐ Safety Violation          ☐ Work Quality          ☐ Insubordination

☐ Lateness/Leave Early        ☒ Violation of Policy          ☐ Other _____

### Warning Information

Violation Date    5/31/05          Violation Time    Mid-Day    Location of Violation    New Castle, DE

| Company Explanation of Incident | Employee Statement |
|---|---|
| Jason was involved in a conversation with Brian Coleman and Bob Koch during which he claims to have been told by Bob Koch that a racially derogative comment about Jason McLean and Brian Coleman was made by Brad Dodson. Rather than following company procedure and reporting the issue to the Project Supervisor and/or HR, Jason left his job site during work hours and approached Brad Dodson to confront him about the comment. | ☐ I agree with the company's statement <br><br> ☒ I disagree with the company's statement; <u>Explanation</u> <br> I never left my job site. We all were working in the same area. |

★*If necessary, use the back of the form to complete your explanation* ★

### Action Taken As Result Of Warning

Jason violated CCG's Harassment Policy by not following the Complaint Procedures. He also violated Company policy by leaving his job site during work hours. A copy of the Company's Harassment Policy and Complaint Procedures are being reissued. If this type of violation occurs again, Jason will be subject to further disciplinary action.

### *MUST BE COMPLETED*

I have read and understand this warning and decision, and have had the opportunity to express my viewpoint.

Employee's Signature: *Jason McLean*                    Date: 6-21-05

Signature of Person Preparing Warning: *Lisa Clements*        Date: 6/17/05

Supervisor's Signature (if different): *John Doty*            Date: 6-21-05

D0476

# Communications Construction Group, LLC.
## Employee Warning Report

Employee's Name    Brian Coleman            Date of Warning   6/20/05       Job #    5007

## Type of Violation

☐ Attendance          ☐ Safety Violation       ☐ Work Quality        ☒ Insubordination

☐ Lateness/Leave Early      ☒ Violation of Policy         ☐ Other

## Warning Information

Violation Date   5/31/05        Violation Time      Mid-Day     Location of Violation   New Castle, DE

| Company Explanation of Incident | Employee Statement |
|---|---|
| Brian was told by Bob Koch that Brad Dodson had made a racially derogative remark and it was directed towards Jason McLean and Brian Coleman. Upon hearing this, rather than following company policy and raising the issue with the Project Supervisor and/or HR, Brian left his job site and confronted Brad to question him about the comment. While doing so, Brian waved his finger at Brad's face in a menacing manner. | ☐ I agree with the company's statement<br><br>☐ I disagree with the company's statement; Explanation |

★ *If necessary, use the back of the form to complete your explanation* ★

## Action Taken As Result Of Warning

Brian violated CCG's Harassment Policy by not following the Complaint Procedure and by engaging in inappropriate physical interaction with another employee. A copy of CCG's Harassment Policy and Complaint Procedure are being reissued. Brian also violated CCG's policy by leaving his job site during working hours. If this type of violation occurs again, Brian will be subject to further discipline, up to and including termination.

## MUST BE COMPLETED

I have read and understand this warning and decision, and have had the opportunity to express my viewpoint.

Employee's Signature: _____        Date: 6/21/05

Signature of Person Preparing Warning: Lisa Clements        Date: 6/17/05

Supervisor's Signature (if different): John Auth        Date: 6-21-05

D0481

# EXHIBIT G

| Page: 1 | Report Date: 05/31/2005 | Agency: New Castle County PD | Complaint: 32-05-066101 |
|---|---|---|---|

| Reported Date and Time: TUE 05/31/2005 1535 | Initial Crime Report | Occurred: TUE 05/31/2005 1411 thru TUE 05/31/2005 1412 |
|---|---|---|

Location:
cunane CIR forest ridge    Newark, DE 19702
AT ENTRE LANE

M.O. and Incident Overview:
Victim reported that Suspect pointed his finger at Victim and poked him in the chest with his fingers during an argument over a racial epithet made by Suspect last week.

| Grid 050-330 | Sector 34 | County New Castle | Domestic Related ☐Yes ☒No | 4-F-14 Sent? ☐Yes ☒No | Gen Broadcast Sent? ☐Yes ☒No |
|---|---|---|---|---|---|

## Victim Information

| Victim Number 001 | Name COLEMAN, BRIAN T | | | | |
|---|---|---|---|---|---|
| Type Individual | Sex Male | Race Black | Ethnic Origin Non-Hispanic | Age 32 | D.O.B. ▉▉1972 |

| Address 20 tarpon CT WILLINGBORO, NJ 08046 | Resident Status Full Time | Home Telephone (609) 871-3763 | Employer/School COMMUNICATIONS CONSTRUCTION GR | Work Telephone (302) 322-7972 |
|---|---|---|---|---|

| Reporting Person? ☒Yes ☐No | Victim Injured? ☐Yes ☒No | Victim Deceased? ☐Yes ☒No | Officer Comments |
|---|---|---|---|

| Injuries | Description of Injuries |
|---|---|

## Suspect/Defendant Information

| Sequence 001 | Type Suspect | SBI Number | Name DODSON, BRADLEY | | Nick Name |
|---|---|---|---|---|---|
| Sex Male | Race White | Ethnic Origin Non-Hispanic | Age 33 | D.O.B. ▉▉1971 | Height 6' 03" | Weight 210 | Skin Tone | Eye Color Blue |

| Hair Color Brown | Hair Length | Hair Style | Facial Hair | Voice Speech | Teeth | Build | Glasses |
|---|---|---|---|---|---|---|---|

| Disguise | Disguise Color(s) | Resident Status Full Time | Unusual Characteristics | Armed With Unarmed |
|---|---|---|---|---|

| Address 1021 puzzletown RD DUNCANSVILLE, PA 16635 | Home Telephone (302) 322-7972 | Employer/School COMMUNICATIONS CONSTRUCTION GRP 700 LARKINS ST New Castle, DE 19720 | Work Telephone (302) 322-7972 |
|---|---|---|---|

| Arrest Number | Suspect's Clothing Description |
|---|---|

## Crimes and Associated Information

| Victim Number 001 | Crime Seq 001 | Statute DE:11:0602:000A:M: | Crime Description Menacing |
|---|---|---|---|
| Location Of Offense Construction Site | Status No Victim cooperation 05/31/2005 | Involvement ☐Alcohol ☐Drugs ☐Computer | General Offense |
| Suspected Hate/Bias ☒Yes ☐No - N/A | Hate/Bias Type Anti Black | Crime Code 13164E - Intimidation/Reckless Endanger/Terroristic Threat/Harassment/Other Assaults/Non-Aggravated | |
| Burglary Force Involved ☐Yes ☒No | Weapon/Force Used Personal Weapons Hands/Feet | | |

| Victim Number 001 | Crime Seq 002 | Statute DE:11:0601:00a1:M: | Crime Description Offensive Touching |
|---|---|---|---|
| Location Of Offense Construction Site | Status No Victim cooperation 05/31/2005 | Involvement ☐Alcohol ☐Drugs ☐Computer | General Offense |
| Suspected Hate/Bias ☐Yes ☒No - N/A | Crime Code 13134E - Offensive Touching/Other Assaults/Non-Aggravated | | |
| Burglary Force Involved ☐Yes ☒No | Weapon/Force Used Personal Weapons Hands/Feet | | |
| M.O. Information | MO Class Suspect's General Actions | MO Description POINTED FINGER | |
| | MO Class Type of Weapon Used | MO Description HANDS | |

DEPOSITION EXHIBIT
CLEMENTS-4
9/19/07 -CMV
PENGAD 800-631-6989

## Victim - Suspect/Defendant Relationships

| Victim - 001 COLEMAN, BRIAN T | Suspect/Defendant - 001 DODSON, BRADLEY | Victim Offender Relationship Otherwise Known |
|---|---|---|

## Witness Information

| Sequence 001 | Type Witness | Name MCLEAN, JOSEPH G | | Sex Male | Race White | Age 46 | D.O.B. ▉▉1958 |
|---|---|---|---|---|---|---|---|
| Address hcl box 78 MADERA, PA 16661 | | Home Telephone (814) 378-5436 | Employer/School COMMUNICATIONS CONSTRUCTION GR | | | Work Telephone | |

| Sequence 003 | Type Witness | Name KOCH, MICHAEL B | | Sex Male | Race White | Age 36 | D.O.B. ▉▉1968 |
|---|---|---|---|---|---|---|---|

| Reporting Officer OFC MEYER - 2582 2 | Supervisor Approval EUGENE J MCKENNA  OJNCEJM  Date 05/31/2005 1822 |
|---|---|

| Page: 2 | Report Date: 05/31/2005 | Agency: ⬤ Castle County PD | ⬤ | Complaint: 32-05-066101 |
|---|---|---|---|---|

Sequence 003 Continued

## Witness Information

| Address 219 wallingford AVE WALLINGFORD, PA 19086 | Home Telephone (484) 368-1498 | Employer/School COMMUNICATIONS CONST GROUP | Work Telephone |
|---|---|---|---|

| Sequence 005 | Type Witness | Name KRAKOWSKI, FRANK | Sex Male | Race White | Age 46 | D.O.B. ███958 |
|---|---|---|---|---|---|---|

| Address rd 1 box 229 ROARING SPRING, PA 16673 | Home Telephone (814) 224-2197 | Employer/School COMMUNICATIONS CONST GROUP | Work Telephone |
|---|---|---|---|

### Investigative Narrative

On the above date and time I responded to the above location in reference to a possible hate crime incident. Ofc. Falkenburg responded as well and was able to interview the Victim in the incident as well as some of the witnesses. I made contact with the suspect obtaining his account of what had transpired and then met with Ofc. Falkenburg to brief same. I spoke briefly with Victim who had expressed concern over what transpired. I also spoke briefly with W-1 (Koch) who corroborated Victims account with respect to being present when Suspect made the racial statement. Due to the nature of this incident I made contact with Sgt. Gregory advising him of what we had learned which was that a racial slur was made by Suspect towards Victim last week (believed to be on Friday). Victim was advised of what had been said by Suspect and upon hearing same went to speak with Suspect about the matter. Victim had apparently just learned of the statement made by Suspect today's date as the witnesses to same did not say anything on Friday. Victim had concerns over going to the manager as the manager for the site is the suspects' brother. Victim advised that the incident turned into an argument and that Suspect had poked him in the chest. I contacted Deputy AG S. Walther and briefed him on what had transpired and the concerns. I was advised that the matter based upon the offense was a misdemeanor offensive touching not in our presence and therefore Victim could be given a copy to sign warrants. Deputy AG Walther advised that the hate crime status would amplify the charges from unclassified misdemeanor to a class A misdemeanor and was not an actual separate offense believing that there was a flag that could be checked to document same. Based upon the interviews conducted by Officer Falkenburg and myself one offense of menacing was added to this complaint. I made contact with Sgt. Gregory advising him of the conversation with Dep. Ag Walther at which time he contacted Lt. Mcgowan briefing him on same. I made contact with Pc Fender who is the site manager and educated him on future issues as well as the actions we would be taking todays date. Victim was provided with the complaint information and referred to Jp court to sign warrants. Based upon the investigation it was learned that this incident stemmed from a statement made by Suspect last week which was racial in nature therefore making same a potential hate crime and documented as such. No further action taken by this officer reference this incident at this time. For additional refer to Officer Falkenburg's supplement as interviews were conducted by same and the exact nature of the statement was relayed to him and then told to me.

### Statement of Suspect 001 - BRADLEY DODSON

Bradley advised that Brian and Jason approached him while he was on the hill drilling. He advised that some guy told them that he called them a nigger. He advised that he supposedly said it last week. (He did not admit or deny making the statement at this time). He advised that they first went to Frank and then to him. He advised that they were yelling at him asking him what he said and claimed that Brian was in his face screaming. He advised that he told them he did not know what they were talking about and called a supervisor at which time he was shaking his finger. He claimed that Brian told him not to point at him however he did so at which time Brian approached him still upset. He advised that he poked Brian in the chest 2-3 times with his fingers at which time Brian poked him back claiming that he should not have done same. He detailed the incident a little better advising that he was up on the hill drilling when Brian came up on a Kubota. He advised that they started yelling at Frank about what they were saying calling them Niggers. He advised that he had no idea what they were talking about and then got on the phone calling Dave (Manager to come over right away. He called Mike the field supervisor and while he was doing so Brian was in front of him with Jason there as well. Brian was making some kind of statement in reference to his hands being lethal. Brian told him not to point his finger at him, however he continued to do so at which point Mike came at him. He poked Brian in the chest with his fingers 2-3 times in the chest adding that he probably should not have done that, however Brian then poked him back.

| Reporting Officer OFC MEYER - 2582 2 | Supervisor Approval EUGENE J MCKENNA OJNCE.IM Date 05/31/2005 1822 |
|---|---|

| Page: 3 | Report Date: 05/31/2005 | Agency: New Castle County PD | Complaint: 32-05-066101 |

## Statement of Suspect 001 - BRADLEY DODSON - Continued

He understood that warrants could be signed for his arrest by Victim and that there were subjects present who heard him make the statement.

| Reporting Officer OFC MEYER - 2582 2 | | Supervisor Approval EUGENE J MCKENNA  OJNCEJM  Date 05/31/2005 1822 | | |
| Detective Notified | | Referred To | | |
| Solvability Factors | ☐ Witness<br>☐ Suspect Located | ☐ M. O.<br>☐ Suspect Described | ☐ Trace Stolen Property<br>☐ Suspect Identified | ☐ Suspect Named<br>☐ Suspect Vehicle Identified | Status Has Follow Up |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JASON MCLEAN and | ) | |
| BRIAN COLEMAN, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No.: 06-617-SLR |
| | ) | |
| COMMUNICATIONS | ) | JURY TRIAL DEMANDED |
| CONSTRUCTION GROUP, LLC., | ) | |
| | ) | |
|     Defendant. | ) | |

**<u>CERTIFICATE OF MAILING</u>**

       I certify that on this 2nd day of January 2008, I served electronically the attached

Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Partial Summary

Judgment on the following parties:

      Michael B. Kelly, Esquire
      Daniel M. Silver, Esquire
      McCarter & English, LLP
      Renaissance Centre
      405 N. King Street, 8th Floor
      Wilmington, DE 19801

      Thomas Benjamin Huggett, Esquire
      Courtney A. Wirth, Esquire
      Morgan, Lewis & Bockius, LLP
      1701 Market Street
      Philadelphia, PA 19103

                  **YOUNG, MALMBERG & HOWARD, P.A.**

                  /s/ Ronald G. Poliquin
                  Ronald G. Poliquin, Esquire
                  I.D. No. 4447
                  30 The Green
                  Dover, DE 19901
                  (302) 672-5600
                  *Attorney for Plaintiffs*